1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                            SOUTHERN DISTRICT OF CALIFORNIA

10

11  JULIO CESAR IBANEZ,                )    Civil No. 05cv1550 LAB(RBB)
                                       )
12                  Plaintiff,         )    **REPORT AND RECOMMENDATION RE:**
                                       )    **GRANTING IN PART AND DENYING**
13  v.                                 )    **IN PART DEFENDANTS' MOTION TO**
                                       )    **DISMISS THE FIRST AMENDED**
14  EDUARDO GARZA; DOE HAGMAN; DOE     )    **COMPLAINT AND DENYING THE**
    MACIAL; NIBRAS MAROKI;             )    **MOTION TO STAY THE ACTION**
15  JEANNETTE CEBALLOS; and PEDRO      )    **[DOC. NO. 18]**
    GUZMAN,                            )
16                                     )
                    Defendants.        )
17                                     )
    _____)
18

19        Plaintiff Julio Cesar Ibanez, a state prisoner proceeding pro

20  se and in forma pauperis, filed a civil rights complaint in the

21  United States District Court for the Northern District of

22  California on March 21, 2005 [doc. no. 1], pursuant to 42 U.S.C. §

23  1983.  On August 3, 2005, Ibanez's case was transferred to this

24  district [doc. no. 1].  On October 28, 2005, United States District

25  Judge Larry Alan Burns dismissed Plaintiff's Complaint for failure

26  to state a claim upon which relief could be granted [doc. no. 2].

27  Ibanez was given until November 27, 2005, to file an amended

28  complaint.  (Order Dismissing Compl. 8.)

1    The First Amended Complaint ("Amended Complaint") was filed on
2    November 14, 2005 [doc. no. 3], terminating ten of the original
3    sixteen Defendants from this action.  (Compare Compl. 1, with Am.
4    Compl. 1.)  Ibanez asserts "claims of relief" against all six
5    remaining Defendants for (1) excessive force, (2) deliberate
6    indifference to the infliction of pain on the Plaintiff, (3)
7    deliberate indifference to serious medical needs in violation of
8    the Eighth Amendment, (4) assault, and (5) battery.  (Am. Compl. §
9    V, at 17-18.)  Against Defendants Maciel[1] and Guzman, Plaintiff
10   asserts an additional cause of action for "malicious torture."
11   (Id.)

12   On April 14, 2006, Defendants Garza, Maciel, Maroki, Ceballos,
13   and Guzman filed a Motion to Dismiss the Amended Complaint or, in
14   the Alternative, Stay the Action [doc. no. 18].  Defendant Hagman
15   did not participate in this Motion because he has not been served
16   with the Complaint or the Amended Complaint; he has been on
17   extended sick leave from the California Department of Corrections
18   ("CDC") since June 3, 2005 [doc. no. 11].  On April 14, 2006, the
19   five appearing Defendants also filed a Memorandum of Points and
20   Authorities in Support of Motion [doc. no. 19] and the Declarations
21   of N. Grannis [doc. no. 21], D. Bradbury [doc. no. 22], and J.T.
22   Stovall [doc. no. 23].

23   The Court found Defendants' Motion suitable for decision
24   without oral argument pursuant to civil local rule 7.1(d)(1) on May
25   17, 2006 [doc. no. 25].  On May 22, 2006, Ibanez filed a Request

26

27   [1] Plaintiff spells this Defendant's name "Macial" (Am. Compl.
     1), but defense counsel spells it "Maciel" (Mot. Dismiss 1).  This
28   Court presumes counsel for Defendants spelled his client's name
     correctly and follows that spelling.

for Extension of 30 Days Time to File Response on Defendants'
Motion to Dismiss [doc. no. 27].  The Court granted Plaintiff's
Request for Extension on May 31, 2006, requiring Ibanez's
opposition to be filed by June 30, 2006, and Defendants' reply to
be filed by July 7, 2006 [doc. no. 28].  On May 26, 2006, Plaintiff
filed his Response to Defendants' Motion to Dismiss [doc. no. 30],
and on June 16, 2006, he filed an Amended Response to Defendants'
Motion [doc. no. 32].  Defendants filed their Reply on July 6, 2006
[doc. no. 34].

Plaintiff was subsequently given a Rand/Klingele notice
warning him of the need to submit evidence in connection with the
Defendants' Motion to Dismiss for Failure to Exhaust Administrative
Remedies [doc. no. 37].[2]  Ibanez submitted no additional evidence.

The moving Defendants argue that Ibanez's claims for
deliberate indifference to serious medical needs should be
dismissed pursuant to the unenumerated portions of Federal Rule of
Civil Procedure 12(b) because Plaintiff failed to exhaust his
administrative remedies for these claims.  (Defs.' Mot. 2; Defs.'
Mem. 1.)  Defendants also contended that Ibanez's claims regarding
the use of excessive force should be stayed in light of the pending
United States Supreme Court decision in Woodford v. Ngo, __ U.S.
__, 126 S. Ct. 2378 (2006), which had not been decided at the time
Defendants filed their Motion.  (Defs.' Mem. 1.)  In their Reply,
Defendants modify their argument regarding Plaintiff's excessive
force claims in light of the Supreme Court's decision in Ngo.

---

[2] The Ninth Circuit has previously held that the notice
requirements described in Rand v. Rowland, 154 F.3d 952 (9th Cir.
1998) (en banc) apply to an unenumerated Rule 12(b) motion to
dismiss for failure to exhaust administrative remedies.  Wyatt, 315
F.3d at 1120 n.14.

Defendants now argue that these claims should be dismissed with prejudice, rather than stayed, because Ibanez's administrative grievance regarding excessive force was rejected as untimely, and these claims are barred under <u>Ngo</u>.  (Reply 3.)

For the reasons set forth below, the district court should **GRANT IN PART AND DENY IN PART** Defendants' Motion to Dismiss, and it should **DENY** Defendants' Alternative Motion to Stay the Action as **MOOT** in light of the Supreme Court's recent decision in <u>Ngo</u>.

## I. FACTUAL BACKGROUND

**A.   <u>Plaintiff's Version of the Events of May 26, 2004</u>**

On May 26, 2004, Plaintiff was extracted from his cell in the administrative segregation unit ("Ad. Seg.") at Donovan State Prison ("Donovan"), after masterminding an elaborate plan to attempt to obtain medical care for symptoms that had gone untreated for approximately two months.  (Am. Compl. § V, at 4-5.)  Ibanez first arranged twisted bedsheets and wool blankets to form a web inside his cell.  (<u>Id.</u> at 5.)  He dressed himself in cutoff shorts (made of his prison-issued jumpsuit), a t-shirt, socks, and two handkerchiefs, one around his head and the other covered his nose and mouth.  (<u>Id.</u>)  Plaintiff then covered himself with a wool blanket and broke both the back and front windows of his cell. (<u>Id.</u>)  As the Defendants approached his cell, Ibanez picked up his mattress and held it in front of himself as a shield.  (<u>Id.</u>)

Defendant Garza yelled, "Ibanez, what the hell are you doing?" (<u>Id.</u> at 6.)  Plaintiff responded that he was trying to get medical attention.  (<u>Id.</u>)  Defendant Maroki told Ibanez to "cuff up" or he was coming in to get him.  (<u>Id.</u>)  Rather than "cuffing up," Plaintiff began listing the symptoms for which he wanted treatment

-- dizziness, headaches, nausea, spleen discomfort, heart pain, blurry vision, and constipation.  (Id. at 7.)  As Ibanez was listing his symptoms, other guards began arriving in response to the alarm they heard.  (Id.)  Defendant Garza briefed them on the situation and warned Plaintiff to "cuff up."  (Id.)  Ibanez refused and continued to demand that his medical request be acknowledged and he be transferred to the medical treatment area of Ad. Seg. (Id.)

When Plaintiff verbally refused to "cuff up," Defendant Garza opened the tray slot in the solid door of Ibanez's Ad. Seg. cell and began spraying pepper spray through the slot.  (Id.)  Plaintiff estimates Garza continued spraying into his cell for four to six minutes until most of the cell was soaked in pepper spray.  (Id. at 8.)  When Garza stopped spraying for a moment, Ibanez looked around his mattress shield, and Garza sprayed him in the face.  (Id. at 8-9.)

On Garza's orders, Officer Giron, who is not a Defendant in this action, immediately opened the cell door.  (Id. at 9.) Defendants Maroki, Garza, Hagman, Maciel, and Ceballos then entered the cell.  (Id.)  Maroki was in front of the other officers.  (Id.) He pressed his shield against the web Plaintiff had made of sheets and blankets as Ibanez pushed with his mattress from the other side.  (Id.)  Maroki then removed his pepper spray from its holster and began spraying through the web onto Plaintiff's head and face, at the same time yelling at Ibanez:  "Get down!  Get down!  Get down!"  (Id.)

Baton in hand, Defendant Garza climbed onto the top bunk in Plaintiff's cell, while Defendant Hagman climbed through between

the top and bottom bunk, his baton also in hand.  (Id. at 9-10.)
Hagman and Garza began hitting Ibanez over the head and shoulders
with their batons.  (Id. at 10.)  Ibanez dropped the mattress he
was holding as a shield and fell to his knees.  (Id.)  Plaintiff
covered his face with his arms in an effort to protect himself, and
Defendant Maciel also began hitting Ibanez.  (Id.)

Defendants continued hitting Plaintiff with their batons on
his bead, neck, back, arms, and torso.  (Id. at 11.)  Ibanez fell
to the ground onto the broken glass from the cell windows he had
broken earlier.  (Id.)  Plaintiff recounts that Defendants Guzman
and Maroki dragged him across the cell and continued hitting him
with their batons, while at the same time they and Defendant
Ceballos began kicking and stomping on Ibanez's face and head.
(Id. at 11-12.)  Maroki and Ceballos told Plaintiff to "cuff up."
(Id. at 12.)  When Ibanez placed his hands behind his back,
Defendant Garza ordered Officer Lorocco to "[g]et the leg irons to
secure him."  (Id.)  Within seconds, Plaintiff's hands and feet
were secured in handcuffs and leg irons.  (Id.)

Defendant Maciel dragged Plaintiff, who was lying face down,
out of his cell by his hands across the broken glass.  (Id. at 13.)
Ibanez alleges that Maciel "furthered his torture by placing his
knee on top of Plaintiff[']s[] right temple, placing all his weight
and bouncing up and down . . . while Plaintiff[']s[] head rested on
top of broken glass."  (Id.)  As Defendant Maciel was doing this,
he was yelling at Ibanez, "'You're a tuff [sic] guy[,] huh?'"
(Id.)  Plaintiff estimates Maciel continued doing this for
approximately twenty seconds before Defendant Guzman asked Maciel

to help carry Ibanez downstairs to the shower area.  (<u>Id.</u> at 13-
14.)

In the shower, Guzman and Maciel tightened Plaintiff's cuffs
and leg irons to the point that they caused unnecessary pain.  (<u>Id.</u>
at 14.)  After Ibanez had been lying on the shower floor in the
tightened cuffs for approximately ten minutes, Defendant Garza
asked Plaintiff if he would promise to behave if Garza loosened the
cuffs and leg irons.  (<u>Id.</u>)  Ibanez agreed, and Garza loosened the
cuffs and closed and locked the shower area.  (<u>Id.</u>)  The cold water
was turned on, and Plaintiff believes it took him three to five
minutes to stand up.  (<u>Id.</u> at 15.)  He then rinsed off the blood
and pepper spray that covered him.  (<u>Id.</u>)

Ibanez estimates he was left in the cold shower for forty to
fifty minutes before Medical Assistant Magno arrived to inspect
Plaintiff's injuries.  (<u>Id.</u>)  After Magno completed his medical
evaluation, Ibanez was escorted to Defendant Garza's office by
Officer Lorocco.  (<u>Id.</u>)  Garza sought to interview Plaintiff on
videotape regarding the incident, and afterwards, Ibanez was placed
in a new Ad. Seg. cell.  (<u>Id.</u> at 16.)

The Medical Report of Injury or Unusual Occurrence form filled
out by Medical Assistant Magno the same day states that Plaintiff
"presented w[ith] multiple contusions/bruises over his face, neck,
[and] arms due to use of baton.  He was also exposed to O.C. spray
while inside his cell. . . .  Patient decontaminated inside . . .
lower tier shower room."  (<u>Id.</u> § III, at 1.)  The medical report
does not mention any active bleeding, broken bones, dislocations,
dried blood, cuts, lacerations, punctures, or swollen areas.  (<u>See</u>
<u>id.</u>)

**B.     Subsequent Administrative Proceedings**

In July 2004, Ibanez was transferred to the California Correctional Institution at Tehachapi ("Tehachapi"). (Pl.'s Resp. 10.)  On September 30, 2004, at Tehachapi, Ibanez attended a "committee" hearing regarding the May 26, 2004, Donovan incident and received forty-five days of forfeited good credit time as punishment for his rules violation. (Am. Compl. § II, at 2 n.2.)

On November 9, 2004, Plaintiff filed a victim compensation and government claim with the State of California "for internal head and back injury, emotional distress, p[s]yc[h]ological trauma, [and] mental and physical trauma." (Id. at 1.)  That same day, Ibanez served a copy of his claim on the Mexican Consulates in San Diego and San Francisco and on the Mexican Embassy in Washington, D.C.  (Id.)

1.     The Deliberate Indifference to Serious Medical Needs
       Claim

Also on November 9, 2004, Plaintiff submitted a CDC 602 inmate/parolee appeal form ("CDC 602") to the appeals office at Tehachapi regarding the CDC's failure to provide requested medical care for stomach problems about which he had been complaining since December 2003. (Id. at 3; Bradbury Decl. Ex. A at 3.)  Ibanez included a request for treatment of recent severe head and spinal pain. (Bradbury Decl. Ex. A at 3.)  On November 23, 2004, Nurse U. Paulsen responded that Plaintiff's stool sample had been sent to the lab for study, and he would be treated appropriately if the test results indicated a need for medical attention. (Id.)  Nurse Paulsen also noted that Ibanez had received pain medications, extra

1  fiber, and numerous blood and stool tests, the results of which

2  were normal.  (Id.)

3      Plaintiff submitted his appeal to the first formal level of

4  review on November 30, 2004, complaining that the care he had

5  received was inadequate to diagnose and treat his year-long

6  illnesses.  (Id. at 3-4.)  As of February 5, 2005, Ibanez had not

7  received a response to his first formal-level appeal, but he had

8  submitted his request to the Director of the CDC, but on December

9  22, 2004, the documents had been returned to him for failure to

10  exhaust the second formal level of review through the warden at his

11  current facility.  (Id. at 7; Am. Compl. § II, at 3 n.3.)

12      Plaintiff subsequently submitted the matter for second-level

13  review, and on February 23, 2006, Maureen McLean and Acel K.

14  Thacker, the health care manager and correctional health services

15  administrator at Pelican Bay State Prison ("Pelican Bay"),

16  partially granted Ibanez's appeal.  (Bradbury Decl. Ex. A at 1-2.)

17  They stated that a "colonoscopy ha[d] been scheduled and [Plaintiff

18  would] be followed[ ]up with an appointment in the clinic to review

19  the results.  Dr. Marino [was] treating [Ibanez's] complaints of

20  pain in [his] head and spinal area."  (Id. at 2.)

21      Ibanez submitted his deliberate indifference to medical needs

22  claim to the director's level of review on March 6, 2006, and the

23  claim was denied at that level on May 22, 2006.  (Defs.' Mem. 8;

24  Reply 2-3.)

25      2.  The Excessive Force Claim

26      Seven months after the May 2004 incident, on December 27,

27  2004, Plaintiff submitted a CDC 602 form to the appeals office at

28  Tehachapi, seeking money damages for Donovan staff's alleged

excessive use of force, failure to protect, medical malpractice, deprivation of due process, and failure to provide medical attention during and after the May 26, 2004, cell extraction.  (Am. Compl. § I, at 4-5, § II, at 2.)  This CDC 602 form was returned to Ibanez on December 30, 2004, because "[t]here ha[d] been too great a TIME LAPSE between when the action or decision occurred and when [he] filed [his] appeal with no explanation of why [he] did not or could not file in a timely fashion."  (<u>Id.</u> § I, at 3 (first level screening response).)  Plaintiff was told that if he "would like to pursue this matter further, [he] must submit an explanation and supporting documentation explaining why [he] did not or could not file [his] appeal timely."  (<u>Id.</u>)

Ibanez resubmitted his appeal at the formal level on January 6, 2005, arguing that "[t]he Prison Litigation Reform Act of 1995, only requires the exhaustion of '<u>available</u>' administrative remedies prior to filing a 42 U.S.C. § 1983 [complaint]."  (<u>Id.</u> at 4.) Plaintiff further explained that he did not file the administrative appeal form within the mandatory two-week period because monetary damages were the only relief sought, and the administrative appeal process could not provide him with that remedy.  (<u>Id.</u> at 6.) Ibanez's 602 form was again returned to him on January 11, 2005, and he was told not to resubmit his appeal because the explanation he gave did not justify his delay.  (<u>Id.</u> at 2.)

## II. APPLICABLE LEGAL STANDARDS

**A.    Motions to Dismiss Unexhausted Claims Pursuant to the Unenumerated Portions of Rule 12(b)**

Title 42 U.S.C. § 1997e(a) of the Prison Litigation Reform Act ("PLRA") states:  "No action shall be brought with respect to

prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C.A. § 1997e(a) (West 2003).  The exhaustion requirement applies regardless of the relief sought.  Booth v. Churner, 532 U.S. 731, 741 (2001).

"'[A]n action is "brought" for purposes of § 1997e(a) when the complaint is tendered to the district clerk' . . . ."  Vaden v. Summerhill, 449 F.3d 1047, 1050 (9th Cir. 2006) (quoting Ford v. Johnson, 362 F.3d 395, 400 (7th Cir. 2004)).  Therefore, prisoners must "exhaust administrative remedies before submitting any papers to the federal courts."  Id. at 1048 (emphasis added).

Section 1997e(a)'s exhaustion requirement creates an affirmative defense.  Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003).  "[D]efendants have the burden of raising and proving the absence of exhaustion."  Id.  Defendants in § 1983 actions properly raise the affirmative defense of failure to exhaust administrative remedies through an unenumerated motion to dismiss under Federal Rule of Civil Procedure 12(b).  Id.

Unlike Rule 12(b)(6) motions to dismiss for failure to state a claim for which relief may be granted, "[i]n deciding a motion to dismiss for failure to exhaust nonjudicial remedies, the court may look beyond the pleadings and decide disputed issues of fact."  Id. at 1119-20 (citing Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365, 369 (9th Cir. 1988)).  But "if the district court looks beyond the pleadings to a factual record in deciding the motion to dismiss for failure to exhaust . . . [,] then the court must assure that [the plaintiff] has fair notice of his

1   opportunity to develop a record." _Id._ at 1120 n.14.   Ibanez was

2   given this notice.

3        "If the district court concludes that the prisoner has not

4   exhausted nonjudicial remedies, the proper remedy is dismissal of

5   the claim without prejudice." _Id._ at 1120 (citing _Ritza v. Int'l_

6   _Longshoremen's & Warehousemen's Union_, 837 F.2d 365, 368 & n.3 (9th

7   Cir. 1988)).

8   **B.   The CDC's Administrative Grievance Process**

9        "The [CDC] provides a four-step grievance process for

10  prisoners who seek review of an administrative decision or

11  perceived mistreatment:   an informal level, a first formal level, a

12  second formal level, and the Director's level." _Vaden v._

13  _Summerhill_, 449 F.3d at 1048-49 (citing _Brown v. Valoff_, 422 F.3d

14  926, 929-30 (9th Cir. 2005)).   The administrative appeal system can

15  be found in title 15, sections 3084.1, 3084.5, and 3084.6 of the

16  California Code of Regulations.   _See Brown v. Valoff_, 422 F.3d 926,

17  929-30 (9th Cir. 2005) (citing Cal. Code Regs. tit. 15, §§

18  3084.1(a), 3084.5(a)-(b), (e)(1)-(2), 3084.6(c) (2005)).

19       To comply with the CDC's administrative grievance procedure,

20  initially, an inmate must file his grievance at the informal level

21  "within 15 working days of the event or decision being appealed . .

22  . ."   Cal. Code Regs. tit. 15, § 3084.6(c) (2006); _see also Brown_,

23  422 F.3d at 929.

24  **C.   Standards Applicable to Pro Se Litigants**

25       When a plaintiff appears in propria persona in a civil rights

26  case, the Court must construe the pleadings liberally and afford

27  the plaintiff any benefit of the doubt.   _Karim-Panahi v. Los_

28  _Angeles Police Dep't_, 839 F.2d 621, 623 (9th Cir. 1988).   The rule

12

of liberal construction is "particularly important in civil rights cases." <u>Ferdik v. Bonzelet</u>, 963 F.2d 1258, 1261 (9th Cir. 1992).

### III. DISCUSSION

Defendants move to dismiss Ibanez's Amended Complaint pursuant to the unenumerated portions of Federal Rule of Civil Procedure 12(b) and the United States Supreme Court's recent decision in <u>Woodford v. Ngo</u>, ___ U.S. ___, 126 S. Ct. 2378 (2006), on the ground that Plaintiff has not properly exhausted his administrative remedies. (Mot. Dismiss 2; Reply 5.) Defendants originally argued that the Court should dismiss Ibanez's claims regarding deliberate indifference to serious medical needs and should stay Plaintiff's claims regarding the use of excessive force. (Defs.' Mem. 1.) In light of the Supreme Court's decision in <u>Ngo</u>, Defendants now argue that all claims in the Amended Complaint should be dismissed:  The claims regarding deliberate indifference should be dismissed without prejudice, and the claims regarding excessive force should be dismissed with prejudice. (Reply 5.)

Ibanez asserts "claims of relief" against all Defendants for (1) excessive force, (2) deliberate indifference to the infliction of pain on the Plaintiff, (3) deliberate indifference to serious medical needs in violation of the Eighth Amendment, (4) assault, and (5) battery. (Am. Compl. § V, at 17-18.) Against Defendants Maciel and Guzman, Plaintiff asserts an additional cause of action for "malicious torture." (<u>Id.</u>) Defendants do not address Ibanez's claims for assault and battery in their Motion or their Reply. (<u>See</u> <u>generally</u> Mot. Dismiss; Defs.' Mem.; Reply.)

//

//

1  **A.   Excessive Force**

2      Plaintiff essentially separates his excessive force claims

3  into four parts:  First, Ibanez focuses on when Defendants Garza,

4  Hagman, and Maciel began hitting his head and upper body with their

5  batons until he fell to the floor on broken glass and was clubbed

6  several times from behind.  (Am. Compl. § V, at 10-11, 17.)

7      Second, Plaintiff complains that Defendants Guzman, Maroki,

8  and Ceballos were kicking and stomping on his face and head, and

9  they were hitting his knees and arms with their batons, even after

10 Ibanez's hands were behind his back.  (Id. at 12, 17.)  Plaintiff

11 also alleges Defendant Maciel dragged him over the broken glass by

12 his cuffed hands.  (Id. at 13, 17.)

13     Third, Ibanez claims excessive force and "malicious torture"[3]

14 occurred when Defendant Maciel used his knee to "bounc[e]" and

15 "stomp" Plaintiff's head into the broken glass on the floor for

16 twenty seconds until Guzman and Maciel carried Ibanez into the

17 shower area.  (Id. at 13-14, 17.)

18     Fourth, Plaintiff alleges he was subjected to "malicious

19 torture" by Defendants Guzman and Maciel when they shoved him to

20 the floor of the shower, tightened the cuffs around his wrists and

21 ankles to the point of pain, and left him in that condition for ten

22 minutes.  (Id. at 14, 18.)

23     In addition to his excessive force claims, Ibanez claims

24 Defendants Garza, Hagman, Maciel, Guzman, Maroki, and Ceballos were

25 deliberately indifferent to the pain they were inflicting on

26 Plaintiff.  (Id. at 17-18.)  This can be construed as a "conditions

27 ──────────────

28      [3] Plaintiff's claims of torture are liberally construed as
   claims of excessive use of force in violation of the Eighth
   Amendment.  See Ferdik v. Bonzelet, 963 F.2d at 1261.

                                  14

of confinement" claim, under which Ibanez would need to prove that
Defendants "kn[e]w[] of and disregard[ed] an excessive risk to
inmate health or safety . . . ." Farmer v. Brennan, 511 U.S. 825,
837 (1994).  Nevertheless, the only CDC 602 form Plaintiff
submitted regarding the May 2004 incident was the form submitted in
December 2004.  (See Am. Compl. § I at 4.)  Therefore, the
exhaustion analysis is the same for this claim as for the excessive
force claims.

Defendants argue that all of Ibanez's excessive force claims
should be dismissed with prejudice because Plaintiff's
administrative grievance was rejected as untimely, and his claims,
therefore, are barred by the Supreme Court's decision in Ngo.
(Reply 3-4.)  Defendants contend that, even if Ibanez was prevented
from filing a CDC 602 form while housed at Donovan, this does not
excuse his untimely filing because he waited "**nearly six months
after his transfer out of [Donovan]**" before filing his first
administrative grievance regarding the Defendants' May 26, 2004,
alleged use of excessive force.  (Id. at 4 (emphasis in original).)

Plaintiff asserts he "was unable to file an administrative
appeal while in Donovan . . . d[ue] to retaliatory conduct on
behalf of housing floor staff." (Pl.'s Resp. 10.)  Ibanez says
staff refused to provide him with the materials necessary to file a
CDC 602 at Donovan, especially in the weeks after the May 26, 2004,
incident.  (Id.)  In July 2004, however, Plaintiff was transferred
from Donovan to Tehachapi.  (Id.)  Still, it was not until December
27, 2004, that Ibanez filed his first administrative grievance
related to Defendants' May 2004 excessive use of force.  (Am.
Compl. § I, at 4.)  Plaintiff does not explain why it took him

15

1  approximately five months after being transferred to Tehachapi to

2  file this CDC 602.  (See Pl.'s Resp. 10.)

3      "Exhaustion of administrative remedies serves two main

4  purposes."  Ngo, __ U.S. at __, 126 S. Ct. at 2385 (quoting

5  McCarthy v. Madigan, 503 U.S. 140, 145 (1992)).  It first "protects

6  'administrative agency authority'" by giving an agency "'an

7  opportunity to correct its own mistakes . . . before it is haled

8  into federal court'" and by discouraging "'disregard of [the

9  agency's] procedures.'"  Id. (quoting McCarthy v. Madigan, 503 U.S.

10  140, 145 (1992)).  "Second, exhaustion promotes efficiency. . . .

11  [and] 'may produce a useful record for subsequent judicial

12  consideration.'"  Id. (quoting McCarthy v. Madigan, 503 U.S. 140,

13  145 (1992)).  These two purposes are best served when civil rights

14  plaintiffs properly exhaust administrative remedies in compliance

15  with all deadlines set by the administrative agency.  Id., __ U.S.

16  at __, 126 S. Ct. at 2385-86.  Therefore, § 1997e(a)'s exhaustion

17  requirement has not been satisfied if the plaintiff filed an

18  administrative grievance that was rejected as untimely.  Id., __

19  U.S. at __, 126 S. Ct. at 2387.

20      Ibanez's CDC 602 regarding Defendants' excessive use of force

21  on May 26, 2004, was submitted on December 27, 2004, seven months

22  after the cell extraction.  (See Am. Compl. § I, at 4.)  This is

23  considerably more than the fifteen working days allowed under the

24  CDC's administrative regulations.  See Cal. Code Regs. tit. 15, §

25  3084.6(c).  Even if the period between May 26, 2004, and July 2004

26  is equitably tolled, at least five months elapsed before Plaintiff

27  filed his first administrative grievance on this subject.

28  Moreover, Ibanez was able to file a distinct and unrelated 602

16

concerning his medical care on November 9, 2004.  (Bradley Decl.

Ex. A at 3.)  Therefore, under Ngo, all of Ibanez's excessive force

claims, as well as his claims for deliberate indifference to

infliction of pain, were not properly exhausted and should be

**DISMISSED**.  See Ngo, ___ U.S. at ___, 126 S. Ct. at 2382, 2387.

Although there is Ninth Circuit precedent stating that a

prisoner's civil rights complaint should be dismissed without

prejudice when the dismissal is because of a failure to exhaust

administrative remedies, this case law is pre-Ngo.  See Vaden, 449

F.3d at 1051 (citing Wyatt, 315 F.3d at 1120) (requiring that a

dismissal under the PLRA for failure to properly exhaust

administrative remedies be a dismissal without prejudice).

The factual basis for Ibanez's claim and the steps he took to

exhaust the claim are before the Court.  After Booth, exceptions to

the exhaustion requirement are limited.  The Supreme Court

explained:  "Thus, we think that Congress has mandated exhaustion

clearly enough, regardless of the relief offered through

administrative procedures."  Booth, 532 U.S. at 741 (quoting

McCarthy v. Madigan, 503 U.S. 140, 144 (1992)("Where Congress

specifically mandates, exhaustion is required[.]").  The

congressional mandate precludes Ibanez from arguing he need not

exhaust because exhaustion would be futile or that the agency has

no power to award the relief requested.  Id. at 741 n.6.  Booth and

Ngo effectively eliminated most exceptions to exhaustion.  Even the

assertion that exhaustion is not required for constitutional claims

does not apply.  See Matthews v. Eldridge, 424 U.S. 319, 329 n.10

(1976) ("If Eldridge had exhausted the full set of available

administrative review procedures, failure to have raised his

17

1   constitutional claim would not bar him from asserting it later in a

2   district court.")

3       Ibanez no longer has time to exhaust his administrative

4   remedies.  There are no applicable exceptions to the exhaustion

5   requirements.  For all these reasons, Plaintiff's excessive force

6   claims should be **DISMISSED WITH PREJUDICE.**

7   **B.   Deliberate Indifference to Serious Medical Needs**

8       Plaintiff essentially asserts two separate claims for

9   deliberate indifference to serious medical needs:  First, Donovan

10  staff failed to diagnose and treat the symptoms Ibanez had been

11  complaining of for two and one-half months prior to the May 2004

12  incident; and second, Defendant Garza failed to obtain medical

13  treatment for the injuries inflicted upon Plaintiff on May 26,

14  2004.  (Am. Compl. § V, at 6-7, 18.)

15      In their Memorandum in Support of Motion to Dismiss,

16  Defendants initially contended Ibanez had not fully exhausted his

17  deliberate indifference to medical needs claims because he had not

18  presented the claims to the third and final director's level of

19  review until March 6, 2006, and a decision from the Director of the

20  CDC was still pending when Defendants filed their Motion on April

21  14, 2006.  (Defs.' Mem. 8.)  In their Reply, filed on July 6, 2006,

22  Defendants assert that, although Plaintiff's deliberate

23  indifference claims were finally fully exhausted on May 22, 2006,

24  these claims must be dismissed under Vaden v. Summerhill, 449 F.3d

25  1047 (9th Cir. 2006), because Ibanez failed to exhaust them before

26  filing his Complaint on March 21, 2005.  (Reply 2-3 (citing and

27  quoting Vaden, 449 F.3d at 1050-51).)

28

18

1   Plaintiff argues his failure to fully exhaust his deliberate
2   indifference to serious medical needs claims prior to filing his
3   Complaint was due to the CDC's failure to comply with its self-
4   imposed deadlines for responding to inmate appeals. (Pl.'s Resp.
5   3-4.)  Ibanez states he had to file his Complaint before receiving
6   the Director's response to this third level appeal or he would have
7   been in danger of exceeding the relevant statute of limitations.
8   (Id. at 6.)  He is mistaken.  Ibanez filed his Complaint long
9   before the statute of limitations was to have run.
10      "Limitations periods in § 1983 suits are to be determined by
11  reference to the appropriate 'state statute of limitations and the
12  coordinate tolling rules . . . .'" Hardin v. Straub, 490 U.S. 536,
13  539 (1989) (quoting Bd. of Regents v. Tomanio, 446 U.S. 478, 484
14  (1980)); see Maldonado v. Harris, 370 F.3d 945, 954 (9th Cir. 2004)
15  ("In determining the proper statute of limitations for actions
16  brought under 28 U.S.C. § 1983, we look to the statute of
17  limitations for personal injury actions in the forum state.").
18  Here, the applicable state statute is California Code of Civil
19  Procedure section 335.1, which contains a two-year limit for the
20  filing of personal injury actions.  Maldonado, 370 F.3d at 954
21  (citations omitted).
22      "Federal law determines when a civil rights claim accrues."
23  Id. at 955 (citing Knox v. Davis, 260 F.3d 1009, 1013 (9th Cir.
24  2001)).  "'Under federal law, a claim accrues when the plaintiff
25  knows or has reason to know of the injury which is the basis of the
26  action.'"  Id. (quoting Knox v. Davis, 260 F.3d 1009, 1013 (9th
27  Cir. 2001)).  Ibanez knew of his injury no earlier than December
28  2003.  (See Bradbury Decl. Ex. A at 1.)  That would place the

1  expiration of the statute of limitations applicable to his

2  deliberate indifference to serious medical needs claims in December

3  of 2005.  See Cal. Civ. Proc. Code § 335.1 (West 2006).  The Ninth

4  Circuit "do[es] not regard the intersection of the exhaustion and

5  statute of limitations requirements as creating a problem for

6  prisoners, however, as . . . the applicable statute of limitations

7  must be tolled while a prisoner completes the mandatory exhaustion

8  process."  Brown v. Valoff, 422 F.3d 926, 942-43 (9th Cir. 2005)

9  (citations omitted).

10      Furthermore, exhaustion prior to the bringing of a civil

11 rights complaint is mandatory.  Vaden, 449 F.3d at 1051.

12          [E]xhaustion requirements are common and they
            are routinely enforced "by dismissing a suit
13          that begins too soon, even if the plaintiff
            exhausts his administrative remedies while the
14          litigation is pending."

15              . . . [A prisoner] may initiate litigation
            in federal court only after the administrative
16          process ends and leaves his grievances
            unredressed.  It would be inconsistent with the
17          objectives of the statute to let him submit his
            complaint any earlier than that.
18

19 Id. at 1050 (quoting Ford v. Johnson, 362 F.3d 395, 398 (7th Cir.

20 2004)).

21      Despite the CDC's delays in responding to Ibanez's

22 administrative appeals, his deliberate indifference to serious

23 medical needs claim should be **DISMISSED WITHOUT PREJUDICE** to

24 bringing a separate action in the future.  See id. (citing Wyatt,

25 315 F.3d at 1120).

26 **C.    Assault and Battery**

27      Plaintiff's remaining claims are state law claims for assault

28 and battery against Defendants Garza, Hagman, Maciel, Guzman,

20

Maroki, and Ceballos.  (Am. Compl. § V, at 17-18.)  Defendants'
Motion to Dismiss does not address these claims.

"When federal claims are dismissed before trial, the question
whether pendent state claims should still be entertained is within
the discretion of the district court." <u>Cook, Perkiss, & Liehe,
Inc. v. N. Cal. Collection Serv., Inc.</u>, 911 F.2d 242, 247 (9th Cir.
1990) (citing <u>Schultz v. Sundberg</u>, 759 F.2d 714, 718 (9th Cir.
1985)).  "[T]he proper exercise of discretion is to dismiss the
pendent state claims as well." <u>Id.</u> (citing <u>Jones v. Cmty.
Redevelopment Agency</u>, 733 F.2d 646, 651 (9th Cir. 1984)).

Section 1367(c) of title 28 pertains to the exercise of
supplemental jurisdiction.  The statute provides that "[t]he
district courts <u>may</u> decline to exercise supplemental jurisdiction
over a claim under subsection (a) [which gives district courts
jurisdiction over pendent claims] if . . . (3) the district has
dismissed all claims over which the district court has original
jurisdiction . . . ." 28 U.S.C.A. § 1367(c) (West 1993)(emphasis
added).

This Court has determined that Plaintiff's federal civil
rights claims should be dismissed.  The Ninth Circuit acknowledges,
however, that "pendent jurisdiction 'is a doctrine of flexibility,'
and that loss of state claims should be considered." <u>Notrica v.
Board of Supervisors</u>, 925 F.2d 1211, 1214 (9th Cir. 1991) (quoting
<u>Carnegie-Mellon Univ. v. Cohill</u>, 484 U.S. 343, 350 (1988)).  "The
running of a state statute of limitations is an important factor
for the district court to consider when deciding whether to dismiss
a pendent claim." <u>Edwards v. Okaloosa County</u>, 5 F.3d 1431, 1433
(11th Cir. 1993).

1    Ibanez's ability to prosecute his state law claims is not

2    adversely affected if the district court declines to retain

3    jurisdiction over them.  Section 1367(d) of title 28 provides, in

4    part, as follows:  "The period of limitations for any claim

5    asserted under subsection (a), . . . shall be tolled while the

6    claim is pending and for a period of 30 days after it is dismissed

7    unless State law provides for a longer period." 28 U.S.C.A. §

8    1367(d) (West 1993).  "The purpose of § 1367(d) was to ensure that

9    plaintiffs did not lose their right to pursue their claims in <u>state</u>

10   <u>court</u> in the event that the federal court failed to exercise

11   supplemental jurisdiction over these claims." <u>Parrish v. HBO &</u>

12   <u>Co.</u>, 85 F. Supp. 2d 792, 795-96 (S.D. Ohio 1999) (emphasis in

13   original); <u>accord</u> <u>Bajorat v. Columbia-Breckenridge Dev. Corp.</u>, 944

14   F. Supp. 1371, 1383 (N.D. Ill. 1996); 16 James Wm. Moore, et al.,

15   <u>Moore's Federal Practice</u> ¶ 106.05[5], at 106-28 (3d ed. 2006).  <u>But</u>

16   <u>see</u> <u>Zychek v. Kimball Int'l Mktg.</u>, No. CV06-64-N-EJL, 2006 U.S.

17   Dist. LEXIS 26953, at *8-9 (D. Idaho Apr. 21, 2006) (holding that §

18   1367(d) does not apply to claims dismissed under Rule 41(a)(1) of

19   the Federal Rules of Civil Procedure).

20   Judicial economy, convenience, fairness and comity do not

21   weigh in favor of exercising jurisdiction over Ibanez's state law

22   claims.  Therefore, because Ibanez's federal civil rights claims

23   should be dismissed, the district court should exercise its

24   discretion and also **DISMISS** Plaintiff's pendent state law claims

25   for assault and battery without prejudice.

26                   **V. The Allegations Against Defendant Doe Hagman**

27   The allegations against Defendant Hagman charge him with the

28   use of excessive force in connection with the May 26, 2004, cell

                                   22

extraction.  (Am. Compl. § V, at 9-11.)  For the reasons discussed above, these civil rights claims are subject to dismissal with prejudice for failure to exhaust administrative remedies.  Although Defendant Hagman has not been served with the Amended Complaint, he is similarly situated to the moving Defendants named in the excessive force claims.  For this reason, the claims against Hagman should also be **DISMISSED WITH PREJUDICE**.  See <u>Ricotta v. State of California</u>, 4 F. Supp. 2d 961, 978-79 (S.D. Cal. 1998) (quoting <u>Silverton v. Dep't of Treasury</u>, 644 F.2d 1341, 1345 (9th Cir. 1981).

### VI. CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss should be **GRANTED** and this action be **DISMISSED** in its entirety. The excessive force claims in Plaintiff's Amended Complaint should be **DISMISSED WITH PREJUDICE**; the separate claim for deliberate indifference to serious medical needs should be **DISMISSED WITHOUT PREJUDICE**; and this case should be **TERMINATED** without prejudice to Ibanez's ability to bring a new action in the future based on his claim for deliberate indifference to serious medical needs. Defendants' Motion to Stay the Action should be **DENIED** as **MOOT**, in light of the Supreme Court's recent decision in <u>Ngo</u>.

This Report and Recommendation will be submitted to the United States District Court judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Any party may file written objections with the Court and serve a copy on all parties on or before **November 22, 2006**.  The document should be captioned "Objections to Report and Recommendation."  Any reply to the objections shall be served and filed on or before **December 6, 2006**.

1   The parties are advised that failure to file objections within the

2   specified time may waive the right to appeal the

3   district court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir.

4   1991).

5

6   Dated:  October 23, 2006

    Ruben B. Brooks
    United States Magistrate Judge

7

8   cc:  Judge Burns
         All Parties of Record

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28